IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK K. BELL, | : | |
| | : | Case No. 2:11-CV-00884 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | Magistrate Judge Kemp |
| | : | |
| Defendant. | : | |

**OPINION & ORDER**

**I.     INTRODUCTION**

This matter is before the Court on Defendant United States of America's Motion to Dismiss Plaintiff's Complaint (Doc. 25).  The United States argues that the Court lacks subject matter jurisdiction under the Federal Tort Claims Act ("FTCA"), because the Complaint impermissibly challenges discretionary conduct, and fails to state a claim under Ohio law.  (Id. at 2).  Plaintiff Patrick Bell opposes, on the grounds that Defendant's employee never exercised any discretion, and that Plaintiff has succeeded at stating an Ohio-law claim for premises liability.  (Doc. 28 at 9, 11).  For the reasons set forth herein, Defendant's Motion is **DENIED**.

**II.     BACKGROUND**

This case arises out of an all-terrain vehicle ("ATV") crash that took place in the Wayne National Forest ("the Forest"), near Athens, Ohio.  The Forest comprises 238,000 acres located in parts of 12 southeastern counties in Ohio, and is owned and managed by the United States Forest Service.  The Forest Service 2006 Land and Resource Management Plan sets out the goals, objectives, standards, and guidelines for each of 18 separate categories related to management of the Forest, including "Forest Health," "Fire Management," "Minerals," and "Public Health and Safety":  "Recreation" is the eleventh of these categories.  (*2006 Land*

*Resource Management Plan, Wayne National Forest*, Doc. 25-6).  The Plan's two goals for recreation are to provide a "broad range of . . . recreation opportunities," and to construct and maintain trails in order "to provide a safe quality experience."  (*Id.* at 4).

William Scripps, an employee of the Forest Service, is the Trail Manager responsible for 78 miles of motorized trails, 17 miles of horse trails, and 17 miles of backpack trails, including those trails relevant to this case, and had been in this position for roughly five years at the time of the events in this case.  (*Dep. of William Scripps*, Doc. 25-4, at 3, 5).  Scripps maintains the trails, and signage on all trails, as well as the campgrounds, picnic areas, and restrooms.  (*Id.*).  He generally maintains the trails by himself, with one season helper.  (*Id.* at 4).

Each year, the Forest service sets a target goal for trail maintenance; safety issues are priority items.  (*Scripps Dep.* at 5-7).  How much maintenance specifically is completed each year is based on how much money is available in the Forest Service's budget.  (*Id.* at 6).  No person instructs Scripps on how to allocate his time for maintenance, however.  (*Id.* at 5-6).  He determines priorities for trail safety and maintenance.  (*Id.* at 6).

Money for trail maintenance at the Forest largely comes from grants from the Ohio Department of Natural Resources.  (*Id.* at 15).  In 2009, the Forest received $200,000 in grant money to maintain the trails, with $10,000 allocated to the purchase of new equipment.  (*Id.* at 19).  Money is used to pay contractors to do maintenance work, and once the funds are exhausted, Scripps works to do whatever maintenance he can with his own equipment.  (*Id.* at 13).  In April 2009, a contractor worked on the entire length of several trails in the Forest, including the one used by Plaintiff in this case.  (*Id.* at 12-13).

On October 8, 2009, Plaintiff visited the Forest with his friend Gary Deal, in order to ride ATVs on one of Defendant's ATV trails.  (*Complaint*, Doc. 1, ¶¶ 3-4).  Plaintiff had never driven

2

an ATV previously, but was an experience motorcycle rider, and was under the instruction of his companion, an experienced rider. (*Id.*, ¶ 5; *Dep. of Patrick Bell*, Doc. 25-1 at 4). Plaintiff lawfully purchased a permit to ride in the Forest, as required by Defendant. (*Compl.*, ¶¶ 3, 11).

On October 8, Plaintiff and Deal were riding on the New Straitsville Loop Trail, a three-mile trail that is approximately 66 inches wide. (*Scripps Dep.* at 9-10). While riding, Plaintiff drove over the crest of a hill and struck an object, throwing Plaintiff from his ATV. (*Compl.*, ¶¶ 6-7). At the time of the crash, Plaintiff and Deal had completed four laps of the trail, when Deal noticed that Plaintiff was not following along behind him as before. (*Dep. of Gary Deal*, Doc. 25-2, at 5-7). Deal backtracked and found Plaintiff in the middle of the trail, injured and disoriented. (*Id.* 7, 9). Lucas Johnson, a Forest Service Law Enforcement Officer, was notified of the accident and came to the scene. (*Dep. of Lucas Johnson*, Doc. 25-3, at 6-7). Plaintiff was transported to a nearby hospital, where Johnson spoke with Plaintiff and Deal. (*Id.* at 8-10).

It was later determined that the object struck by Plaintiff was a partially-concealed metal pipe that ran parallel to, and eventually crossed, the path. (*Compl.*, ¶ 7; *Johnson Dep.* at 12-13). Plaintiff alleges that although he was maintaining a careful look-out in front of him, he was unable to see and avoid the pipe, on account of its partial concealment, its location near the crest of the hill, and the lack of any warning signs. (*Compl.*, ¶ 8). Plaintiff's crash resulted in serious and debilitating injury, including multiple surgeries and permanent damage. (*Id.*, ¶ 9-10).

According to Scripps, there are over 1200 oil and gas wells in this part of the Forest. (*Scripps. Dep.* at 16). Pipes run throughout, and are not normally buried except where crossing a trail. (*Id.* at 15-16). Pipes running parallel to a trail were not seen as a hazard (*id.* at 17) and sit unburied along the ground (*id.* at 16). Near the spot where Plaintiff was injured, the pipe struck by Plaintiff runs roughly parallel to the trail along its edge, unburied. (*Johnson Dep.* at 11). The

pipe crosses at an angle onto the trail, under which it is buried, and then gradually angles away from the edge of the trail on the other side, again exposed. (*Id.* at 13). Scripps testified that it was his understanding that "by law, we really can't do anything about [the pipes]," because they are owned by the oil and gas drilling companies, and so even dead, useless pipes like the one struck by Plaintiff cannot be removed or altered by the Forest Service. (*Id.* at 15-16).

On June 3, 2010, Plaintiff filed an administrative complaint with the United States Department of Agriculture. (*Compl.*, ¶ 14; *see also Form 95*, *Claim for Damage, Injury, or Death*, Doc. 1-1). On May 17, 2011, Plaintiff was advised that the Department had determined that no liability existed on the part of the United States, and therefore denied the administrative claim. (*Id.*, ¶ 15; *see also Letter from United States Dep't of Agric., May 17, 2011*, Doc. 1-2). Consequently, Plaintiff filed this suit on October 5, 2011.

### III. STANDARD OF REVIEW
#### A. Subject Matter Jurisdiction

The Court must first decide whether it has subject matter jurisdiction. *City of Heath, Ohio v. Ashland Oil, Inc.,* 834 F. Supp. 971, 975 (S.D. Ohio 1993) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)); Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of proving jurisdiction when subject matter jurisdiction is challenged under 12(b)(1). *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir. 1986).

Motions under Rule 12(b)(1) "are categorized as either a facial attack or a factual attack." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). A factual attack challenges "the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In such challenges, the Court may "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). No "presumptive truthfulness attaches to plaintiff's allegations, and the

4

existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *see also Ritchie*, 15 F.3d at 598. The court may allow "affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

In contrast, a facial attack is "a challenge to the sufficiency of the pleading itself." *Ritchie*, 15 F.3d at 598. Such a challenge is resolved under the familiar 12(b)(6) standard. *Carrier Corp.*, 673 F.3d at 440. Thus, the Court must take the material allegations in the Complaint as true, and construe them in the light most favorable to the non-moving party. *Ritchie*, 15 F.3d at 598; *see also Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.

### B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89,

5

93 (2007)).  In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

## IV.  ANALYSIS

The FTCA provides that the United States waives its sovereign immunity and may be liable for tort claims under state law caused by its employees' negligent or wrongful acts or omissions, while acting within the scope of their employment, to the same extent that a private individual under like circumstances would be liable.  28 U.S.C. §§ 346(b)(1), 2674.

The FTCA's waiver is not unlimited, however.  The FTCA prohibits claims challenging discretionary functions of agencies or employees of the United States.  This provision bars "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion is abused."  28 U.S.C. § 2680(a).  Limitations and conditions upon which the United States consents to be sued "must be strictly observed, and exceptions thereto are not to be implied."  *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981).

### A.  Discretionary Function

The United States argues that the discretionary function exception to the FTCA "applies to all the conduct alleged in the Complaint."  (Doc. 25 at 11).  Thus, the United States insists that the design and maintenance of the trail system, which left certain hazards unmarked, the failure properly to inspect the trail, and the failure to post warning signs are all "[1] discretionary in nature, are [2] the kind of decisions the exception was designed to protect, and [3] plaintiff has failed to allege facts which would support a finding that the challenged actions are not the kind o[f] conduct that can be said to be grounded in the policy of the regulatory regime."  (*Id.*).

6

Defendant points to the fact that no regulation of the Forest Service exists making trail management and maintenance "anything but discretionary" (*id.*), and that Sixth Circuit decisions have repeatedly found that choices involving maintenance, proper response to hazards, and how to make federal lands safe for visitors are "at bottom a question of how best to allocate resources" and require the making of "policy judgments protected by the discretionary function exception." (*Id.* at 12) (quotations omitted).

Plaintiff responds that Defendant's analysis "ignores the actual testimony" of Scripps, who never claimed that a discretionary decision had been reached, since he believed that he was without authority to remove or otherwise change the pipe. (Doc. 28 at 7). According to Plaintiff, a discretionary decision was never rendered, because Scripps believed he was legally prevented from acting, and so he did not make even a "minimal consideration of the options available," or "a choice that at least arguably advanced a legitimate public interest," as required to invoke the exception. (*Id.* at 8-9). Because the discretionary exception focuses on "the nature of the conduct," concludes Plaintiff, it is inapplicable here. (*Id.* at 9) (quotation omitted).

The discretionary exception applies when two conditions are met: (1) that the acts complained of are "discretionary in nature," meaning they involved "an element of judgment or choice"; and (2) that the decision "is of the kind that the discretionary function exception was designed to shield," meaning it is a governmental action or decision "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (quotations omitted).

In assessing the first prong, courts look to "the governing administrative policy," rather than any employee negligence, to determine "whether certain conduct is mandatory." *Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997) (citations omitted). The critical question is "whether the controlling statutes, regulations and administrative policies mandated that the

Forest Service maintain [the trails] in any *specific* manner"; if not, the Forest Service's "decisions as to the *precise manner* in which to do so would clearly fall within the discretionary function exemption." *Id.* (citing *Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993)) (emphasis in original). If no federal statute, regulation, or policy prescribes a course of action for an employee to follow, such that the employee "has no rightful option but to adhere to the directive," the conduct is discretionary. *Gaubert*, 499 U.S. at 322.

Plaintiff acknowledges that his allegations of Defendant's failure to inspect the trail, place warning signs, and maintain the trail constitute actions "discretionary in nature" and thus sufficient for the first prong of the discretionary exception. (*See* Doc. 28 at 6-9). Forest Service regulations state that construction and maintenance work "shall be directed to what is necessary and economically justified for protection, administration, development, and multiple-use management" of the land. 36 C.F.R. § 212.4(a). Numerous cases in this Circuit have concluded that similar conduct is also entrusted to the "judgment and choice" of government employees.[1]

The Court must therefore proceed to the second prong of the exception: "whether the Forest Service's conduct . . . is the sort of conduct which the discretionary function exception was designed to shield." *Rosebush*, 119 F.3d at 443. In assessing this factor, it is the "nature of the conduct, rather than the status of the actor," that governs whether the discretionary function exception applies. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig*

---

[1] *See, e.g.*, *Rosebush*, 119 F.3d at 442 (finding that the "controlling statutes, regulations and administrative policies did not mandate that the Forest Service maintain its campsites and fire pits in any specific manner," or require that it "warn of the dangers of a fire pit," and thus its conduct fell under the discretionary function exception); *Edwards v. Tennessee Valley Auth.*, 255 F.3d 318, 323 (6th Cir. 2001) (discretionary function exception applied, where "the record demonstrate[d] that TVA ha[d] not adopted any requirement mandating that it maintain the area around the shoreline in a specific manner," and had "adopted no mandatory access or safety requirements regarding the shoreline area."); *Reetz v. United States*, 224 F.3d 794, 796 (6th Cir. 2000) (same, with regard to warning signs for off-road vehicle trails, since there was "no mandatory regulation or policy that precluded the Forest Service from making a judgment of choice on how to mark the [trails]."); *Rich v. United States*, 119 F.3d 447, 451 (6th Cir. 1997) (Army Corps of Engineers' decision regarding road maintenance was "a question of how best to allocate resources," and therefore fell under the discretionary function exception.).

8

*Airlines)*, 467 U.S. 797, 813 (1984). As the Supreme Court has explained, when established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. Thus, for a complaint to survive a motion to dismiss, it must allege facts which

> would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Id.* at 324-25 (footnote omitted).

The Court of Appeals has explained that the following types of decisions "are generally shielded from tort liability by the discretionary function exception: (1) 'the proper response to hazards,' (2) 'whether and how to make federal lands safe for visitors,' and (3) 'whether to warn of potential danger.'" *Edwards v. Tennessee Valley Auth.*, 255 F.3d 318, 324 (6th Cir. 2001) (quoting *Rosebush*, 119 F.3d at 443). In short, where a federal agency "must balance competing needs when deciding how to run a federal facility," the discretionary function exception to the FTCA applies. *Rich v. United States*, 119 F.3d 447, 451 (6th Cir. 1997).

Plaintiff does not dispute that the planning, creation, and maintenance of the trails require the exercise of considerable discretion, in that the placement of the trail, the removal of obstacles, and the placement of signage are left to the judgment of the Forest Service and its employees. Plaintiff argues, however, that no "discretionary decision had been reached to leave the pipe laying exposed," and indeed the topic "had never been discussed," because Scripps was under the (mistaken) understanding that he was prohibited from removing or altering it. (Doc. 28 at 7). Despite the fact that the pipe could have been removed—and the fact that Scripps or his

9

supervisors had discretion to make that decision—a discretionary decision here was "never rendered," unlike the cases cited by Defendant, which each, according to Plaintiff, "involved at least a minimal consideration of the options that were available and a choice that at least arguably advanced a legitimate public interest." (*Id.* at 8).

The United States counters that Plaintiff misunderstands the law: because the decisions relating to the Forest, its trails, and the pipe were "*susceptible* to policy analysis," it "is irrelevant whether that conduct was the result of a policy analysis, whether policy concerns were the basis for the conduct, whether the agency considered all relevant aspects of the subject matter, or whether the agency abused its discretion." (Doc. 31 at 5) (emphasis in original) (citing *Rosebush*, 119 F.3d at 444). When a function is discretionary, Defendant insists, there is a "presumption" that the acts were grounded in policy when exercising that discretion. (*Id.* at 6) (citing *Irving v. United States*, 162 F.3d 154, 168 (1st Cir. 1998) (*en banc*)).

As both the Supreme Court's decision in *Gaubert* and the *en banc* decision by the First Circuit in *Irving* make clear, when government policy allows for the exercise of discretion, there is a "presum[ption] that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324; *Irving*, 162 F.3d at 168. But where a complaint alleges facts showing that "the challenged actions are not the kind of conduct that can be said to be *grounded in the policy of the regulatory regime*," with a focus on the "the nature of the actions taken," the discretionary function exception is inapplicable. *Gaubert*, 499 U.S. at 325 (emphasis added).

In this case, Plaintiff rightly notes that *no action* was actually taken, in the sense that no policy judgment was made regarding the presence of the pipes, their removal, or their covering up, since Scripps mistakenly believed he was without authority to alter or remove them. While the Court will normally afford Defendant the "presumption" that its agent's acts are grounded in

policy, when it has *evidence* that, in fact, the acts were not so grounded, that presumption has been rebutted. The mere fact that, theoretically, Scripps *could have* exercised discretion is not the test the Supreme Court established in *Gaubert*; indeed, the law "the law does not provide that all discretionary acts of federal officers undertaken within the scope of their employment will be subject to the discretionary function exception." *Fitzmaurice v. United States*, No. 1:10-CV-2262, 2013 WL 4781709, at *9 (M.D. Pa. Sept. 5, 2013) (Carlson, M.J.). It is "not enough to establish that an activity is not mandated by statute and involves some element of judgment or choice"; to obtain dismissal of the suit, "the United States must also establish that the decision in question was grounded in considerations of public policy." *Coulthurst v. United States*, 214 F.3d 106, 110 (2d Cir. 2000); *see also Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003) (discretionary function exception does not apply to conduct that "involves no element of choice or judgment grounded in public policy considerations.").

This conclusion is in keeping with the objectives underpinning the discretionary function exception. As the United States notes, by enacting this provision, "Congress sought to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." (Doc. 31 at 4). The United States need not fear judicial second-guessing where no actual policy-based decision-making took place: the discretionary function exception cannot protect the judgments of the United States when no person made any judgment.

A strong parallel is found in the principles of administrative law, where "judgment[s] based upon public policy," which are "the product of administrative experience, appreciation of the complexities of the problem, realization of the statutory policies, and responsible treatment of the uncontested facts" are the sorts of decisions that "administrative agencies are best equipped to make and which justifies the use of the administrative process." *Sec. & Exch. Comm'n v.*

11

*Chenery Corp.*, 332 U.S. 194, 209 (1947). But where "[t]here are no findings and no analysis . . . to justify the choice made, [and] no indication of the basis on which the [agency] exercised its expert discretion," a court cannot accept the decision. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167 (1962). An agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines*, 317 U.S. at 168).

This is not to hold that, under the FTCA, the United States and its employees must "examine the relevant data and articulate a satisfactory explanation" in order to invoke the discretionary function exception; to read in such a requirement would be more than the FTCA's text could bear. But § 2680 requires, at the least, that a government employee at a minimum make a decision based on the policy considerations contemplated by the relevant statute or regulation, and not wholly abdicate his discretion.[2] Anything otherwise is not "conduct [] of the kind that the discretionary function exception was designed to shield." *Rosebush*, 119 F.3d at 441. Under our system of government, United States and its agents are empowered with discretion to make important policy decisions, and a federal court will not lightly disturb those judgments, because it is expected that a national government is better equipped than any one person with the broader vision to answer difficult questions and set national priorities. That faith is meaningless when the government does not actually exercise the discretion entrusted to it.

---

[2] The Court recognizes the serious concern raised by the United States that Plaintiff's logic could lead to litigation over whether "every possible obstruction that an inexperienced rider could encounter . . . should have been removed or marked by a sign." (Doc. 31 at 5). But the Court is satisfied that as long as the United States makes a discretionary choice, the FTCA will serve to bar frivolous lawsuits. To hold otherwise would be to invite an equally unsettling future, where an agency could make any potentially risky action discretionary, without regulatory guidance, and thus isolate itself from liability even if its employees never actually exercised any judgment.

### B.  Failure to state a claim under Ohio law

The United States also argues that Plaintiff has failed to state a claim under Ohio law, and thus the Complaint must fail, since the United States can only be liable under the FTCA in circumstances where, "if a private person, [it] would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The United States concedes that Plaintiff was an "invitee" under Ohio law, but asserts that Ohio law imposes on it only a duty "to exercise ordinary care to maintain the [Forest] in a reasonably safe condition, so as not to unreasonably or unnecessarily expose [Plaintiff] to danger."  (Doc. 25 at 14) (citation omitted).  Defendant insists that it exercised "ordinary and reasonable care," since it had no notice of any hazard imposed by the pipe, and it was not reasonably foreseeable that the off-trail exposed portion of the pipe was likely to cause injury.  (*Id.* at 15).

Plaintiff agrees that he was an "invitee," and that Defendant therefore owed Plaintiff "an ordinary duty of care," including a duty to "maintain the premises in a reasonably safe condition."  (Doc. 28 at 14) (citations omitted).  But Plaintiff argues that the danger posed by the pipe was foreseeable, and that a property owner must fulfill his "affirmative duty to inspect the premises and identify hazards that create an unreasonable risk of harm."  (*Id.* at 15) (citation omitted).  Plaintiff concludes that the question of "whether appropriate steps were taken to prevent reasonably foreseeable injuries" must be resolved by the trier of fact.  (*Id.*).

As explained above, Defendant's Motion is one to dismiss under Rule 12(b)(1), on the grounds that the Court lacks subject matter jurisdiction because of the discretionary function exception, *see supra*, and because the Complaint fails to state a claim under Ohio law.  A motion to dismiss under the FTCA, on the grounds that a plaintiff has failed to allege a claim under the substantive law of the relevant state, is reviewed under the Rule 12(b)(6) standard, and thus the Court "must construe the complaint in the light most favorable to the plaintiff and must

accept all factual allegations as true." *Soto v. United States*, 63 F. App'x 197, 199 (6th Cir. 2003). The Court looks to "the substantive law of the state where the alleged cause of action arose to determine whether the plaintiff has a lawful theory of recovery." *Id.*

Both Parties agree that Plaintiff was an "invitee" under Ohio law. (*See* Doc. 28 at 12-13; Doc. 31 at 7). Invitees are persons who "rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996). A landowner owes a duty to an invitee "to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition." *Light v. Ohio Univ.*, 502 N.E.2d 611, 613 (Ohio 1986).

The occupier of the premises is "not an insurer of the safety of invitees." *Perry v. Eastgreen Realty Co.*, 372 N.E.2d 335, 336 (Ohio 1978) (per curiam). He must, however, "use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows," as well as "inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." *Id.* (quoting PROSSER ON TORTS (4 Ed.), 392-93 (1971)). This obligation "extends to the original construction of the premises, where it results in a dangerous condition." *Id.* Furthermore, it is not the case that an invitee "must demonstrate that a peril was actually known to the owner of premises"; rather, "once the evidence establishes that a dangerous condition existed, and that it is a condition about which the owner should have known, evidence of actual knowledge on his part is unnecessary." *Id.*

In sum, to establish a breach of duty to an invitee, Plaintiff must show: (1) that Defendant was responsible for the hazard; or (2) that at least one persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or (3)

that such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care. *Johnson v. Wagner Provision Co.*, 49 N.E.2d 925, 928 (Ohio 1943); *see also Sullivan v. Oregon Ford, Inc.*, 552 F. Supp. 2d 681, 684 (N.D. Ohio 2008) *aff'd*, 559 F.3d 594 (6th Cir. 2009).

Construing the Complaint in the light most favorable to him, Plaintiff has pleaded facts sufficient to allow a jury to conclude that Defendant acted negligently, in breach of its duty of ordinary care owed to invitees. Plaintiff alleges that he was present on Defendant's land, as an invitee, riding an ATV in an area designated for such use by Defendant. (*Compl.*, ¶¶ 6-7, 11). Plaintiff asserts that, while exercising reasonable care, he struck a partially concealed object, causing him to suffer serious injury. (*Id.*, ¶¶ 8-10). Plaintiff argues that a reasonable person in Defendant's position would have inspected the trail, noticed the pipe, and remedied the hazard and/or placed appropriate warnings. (*Id.*, ¶¶ 12-13). As a land owner, Defendant was required to inspect its land to discover dangerous conditions, and take reasonable precautions to protect invitees from dangers foreseeable from the use of the land. Plaintiff has alleged that Defendant failed in this duty. Plaintiff has therefore stated a plausible claim, raising his right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. Nothing more at this stage is required.

## V. CONCLUSION

The discretionary function exception to the FTCA is inapplicable to the facts of this case. In addition, Plaintiff has succeeded in alleging a claim for relief under Ohio law. Accordingly, the United States' Motion (Doc. 25) is hereby **DENIED**.

**IT IS SO ORDERED.**

                                                 s/ Algenon L. Marbley
                                                 **ALGENON L. MARBLEY**
                                                 **UNITED STATES DISTRICT JUDGE**

**DATED: March 17, 2014**